Drake, Oh. J.,
delivered the opinion of the court:
The principal question of law involved in this case rests upon the following facts: .
The claimants, prior to and during the war of the rebellion, were residents of and merchants in the city of New Orleans.
On the 20th of February, 1862, they sent their travelling clerk into the interior of the State of Louisiana, to collect debts due them, and gave him authority to purchase cotton and sugar for them. At that time New Orleans and the parts of Louisiana into which the clerk was sent were in the possession and under the control of the rebel confederacy.
On the 27th day of April following, New Orleans was occupied by the military forces of the United States, and was held by them during the remainder of the period of the war.
On the 14th of July following, the clerk of the claimants returned from the interior of Louisiana to New Orleans, having, while absent, purchased for the claimants, in districts held -by the rebels, one hundred and seventy-nine bales of cotton. The purchases were in nine or ten small lots, at different places, and the cotton was left at the several points of purchase in the parish of St. Landry, where, in April and May, 1863, it was seized by the military forces of the United States, and sold, and the proceeds paid into the Treasury.
“ Some time about March or April, 1862,” one Avegno, being about to go from New Orleans to the parishes of St. Martin and St. Landry, was requested by the claimant, Lapene, to *368 remit to tlie clerk aforesaid, then travelling in those parishes, the sum of $4,000 or $5,000, and to assist said clerk in his business of buying- cotton, sugar, &c., both of which Avegno agreed to do, and in May following, at New Iberia, in the parish of Iberia, then under rebel control, he delivered to the clerk $5,000, consisting of “bank notes,'Confederate money, and shinplasters.” With this money, and other moneys collected by the clerk on debts due the claimants, the cotton in question was purchased, and the question is, whether the purchase, under the circumstances stated, was a violation of the non-intercourse laws of the United States, or of the principles and rules of public law prescribing commercial non-intercourse between belligerents.
The case is in one respect different in its facts from any previously decided in this court. The point of difference is in this, that at the time the clerk was sent from New Orleans into the interior, and at the time Avegno was requested and agreed to remit to the clerk the sum of money, named, the whole of Louisiana was in possession of the rebels; but before the money was delivered to the clerk, and before he purchased any of the cotton, the army of the United States captured New Orleans, and thereby placed the claimants within the lines of the Union army, while both the clerk and Avegno were, by the fact of the capture of that city, left outside of those lines ( and within the rebel lines.
Had the sending of the clerk into the interior, and the sending of money to him, taken place after the capture, the case would be almost identical with that of Ensley, decided at the present term of this court; but as both those facts occurred before the capture, this case does not 'come within the rule laid down in that.
The ground upon which it is held that a person buying property in the enemy’s country, in violation of the law forbidding-commercial intercourse with that country, cannot maintain an action here for the proceeds thereof, is that his purchase of the property, in violation of that law, vested no title thereto in him.
The question, then, in this case is, whether the claimants had title to the cotton in question. If it was bought in viola- ' tion of that law, they have none; if not so bought, their title is good.
*369 In United States v. Anderson, (9 Wallace, 56,) it was held that commercial intercourse, during' tlie war, among the people inhabiting tbe rebel territory, was not illegal as to the United States, and therefore not invalid, and that a loyal man there might lawfully buy commodities of rebels. This seems to us to settle the rights of the parties in this case.
Had the claimants, at the time of the capture of New Orleans, been in the interior of Louisiana, where their clerk then was, and had they bought cotton as he did, we should, under the ruling in that case, hold that they had not violated the law of non-intercourse, and, therefore, had acquired a valid title to the property; for in making the purchase they would not have passed through the military lines of the government, or in any way carried on commercial intercourse over those lines.
The case is in no proper sense different when their agent, who had been sent there before the capture of New Orleans, found himself, by that capture, separated from his principals. If he then proceeded, without further intercourse with them, to execute the agency created before the capture, and which, when created, was, so far as the laws of the United States wore concerned, lawful, he was doing no more than the principals might have done if they had been there; and we know of no principle of law or statutory provision which would make his acts void. Had the purchases made by him been the result of intercourse between the claimants and him after the capture, and consequently across the lines of the army of the United States, the case would be within the ruling of this court in Ensley’s case, and no recovery could be had of the proceeds of any cotton bought under authority conveyed by such intercourse; but there is no evidence of any such fact, and the case, therefore, is simply one of the performance of an agency within the rebel lines, created by parties living within those lines when the agency was created, but who, by the movements of our army, were afterward brought within the Union lines, and between whom and their agent no intercourse was had across those lines while he was executing his agency.
In our opinion, the fact of the capture of New Orleans did not terminate the agency of the claimants’ clerk; the purchases made by-him vested the title to the cotton in the claimants;- and their loyalty having been established, they are entitled to the net proceeds of the cotton.
*370 The cotton captured in Louisiana in the spring of 18G3 having been partly sold in New Orleans, partly in Boston, and partly in New York, bringing a different price in each of those places, and it being quite impossible, from the evidence, to ascertain at whieh point the cotton of the claimants was sold, their counsel insists upon their being allowed the average net proceeds per bale at those three points, viz, $218 74; but we see no difference in this matter between this case and that of Haler, (4 O. Gis. B., 372,) where it was held that the cotton having beeu traced only into the hands of the quartermaster at New Orleans, the average of the net proceeds of all the cotton sold there should be the measure of the claimants’ recovery. That average Avas then ascertained to be $192 per bale, and that amount is allowed in this case.
The judgment of the court is, that the claimants recover of the defendants the net proceeds of one hundred and seventy-nine bales of upland cotton, being $34,308.